Daniel E. Macken, J.
At the conclusion of the evidence the parties stipulated that the issues be determined by the court and the jury was discharged.
The action is to reform a policy of fire insurance to conform to the agreement between plaintiff and defendant’s agent as to the coverage to be afforded and for judgment on the policy as reformed. The defendant denies that the plaintiff is entitled to the relief sought and affirmatively alleges as a defense that the action was not commenced within one year after the fire as required by the policy and section 168 of the Insurance Law. Plaintiff contends that the limitation is not applicable to this action to reform the policy and further that, if applicable, the defendant by its conduct has waived the limitation.
I find the following facts established. In September, 1960 the plaintiff, a guard at Auburn Prison, with little, if any, business experience, having decided to go into business buying, *728 drying and selling corn, had arranged to lease a grain elevator and was in the process of constructing a three-sided lean-to building to house his machinery and grain. Before undertaking this project the plaintiff called upon Edgar Backus, Sir., president of the National Bank of Waterloo, to arrange to borrow money. At that time Backus suggested to him that he obtain his insurance through his son, Edgar Backus, Jr., who was in the insurance business. As a matter of fact, Backus, Sr., and Backus, Jr., were partners in the insurance agency.
On or about September 9,1960 Backus, Jr., came to plaintiff’s place of business and discussed the placing of fire insurance. Item by item, values totaling $20,000 were placed upon the building, machinery and corn expected to be on hand. Of this amount $4,500 was allocated to the building including electrical wiring, $2,000 for corn, and the balance to machinery and equipment. Backus, concededly authorized by the defendant to issue binders and policies, agreed to issue a binder to that effect and in due course to furnish plaintiff with a policy. On the same date, on behalf of the defendant, Backus issued a binder for fire insurance in the amount of $20,000 ‘ ‘ On — Frame bldg, under construction to be used for storage of Machinery & Grain — Completed Value —$20,000.”
Before the policy was delivered and on November 5, 1960 a fire occurred on the premises which I find resulted in damage in the amount of $4,067.71. Of this amount $1,319.72 consisted of damage to the building including the electrical wiring, $1,740 loss of corn, and the balance various items of machinery and equipment. The defendant takes the position, and it seems conceded, that by the terms of the binder and the policy when issued, coverage was afforded only for the loss occasioned to the building itself including the electrical wiring.
While conceding that it was intended that the machinery and equipment be covered, Backus, Jr., claims that when issuing the binder, it was his impression that the machinery and equipment was to be so attached to the building as to become part of the building and thus be covered by the policy as written. While that may be his present recollection, the language of the binder “ On — Frame bldg, under construction to be used for storage of Machinery ” affords convincing evidence to me that such was not his then understanding. I find that at the time of issuing the binder, Backus was aware that the machinery and equipment were not to be part of the building and that he had agreed to afford coverage for those items. In view of my finding that Backus’ present recollection is faulty in the respects heretofore indicated, I also reject his contention that the corn *729 was not to be covered until further notification was given to him by the plaintiff.
I find that the issuance of the binder and policy in the form they took was brought about by a clerical error or negligence of Backus in reducing the agreement to writing, and therefore conclude that unless this action be barred by the one-year limitation provided by section 168 of the Insurance Law, plaintiff is entitled to have the policy reformed to include coverage for all of the items of damage heretofore found by me to have been sustained. (29 N. Y. Jur., Insurance, §§ 691, 693 and cases therein cited; Male Choir Bavaria v. Concordia Fire Ins. Co., 257 App. Div. 1030.) Plaintiff’s failure to comprehend the legal significance of the binder description does not bar such relief. (Lewitt & Co. v. Jewelers’ Safety Fund Soc., 249 N. Y. 217, 223.)
The action was commenced February 21, 1962, more than a year after the fire, and in determining whether the plaintiff must therefore be denied relief, I shall first consider his contention that, if applicable, the defendant has waived compliance with the limitation. By letter dated January 10, 1961, plaintiff mailed proof of loss to the defendant. It appears without contradiction and I find that sometime prior to March 3, 1961, defendant’s claim representative called upon plaintiff’s attorney, requested that the plaintiff sign a so-called nonwaiver agreement, and informed the attorney that unless such an agreement was signed, there would be no further discussion of the claim. I further find that no such agreement was ever furnished the defendant. On or about March 3, 1961, the defendant addressed a letter to the plaintiff which, although to me a masterpiece of obscurity, the plaintiff understood to be a rejection of his claim and so alleged in his complaint. From that date, some eight months before the expiration of the year’s limitation, until the commencement of this action, the record is completely silent as to any negotiation or contact, written or oral, between the plaintiff or his attorney and defendant’s claim representatives. Under these circumstances, I am obliged to hold as a matter of law that plaintiff has failed to establish that the limitation, if applicable, has been waived by the defendant. (Palazzola v. Pennsylvania Fire Ins. Co., 273 App. Div. 856.)
There remains the question whether the one-year limitation is applicable to this action. Section 168 of the Insurance Law requires that every fire insurance policy provide that “No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity * * * unless commenced within twelve months next after inception of the *730 loss By the provisions of subdivision 3 of that section a binder is deemed to include such a provision. The question presented is whether this action to reform the policy to provide substantial coverage not afforded by the terms of the original policy is an action “on” the policy within the contemplation of the limitation. The only seemingly apposite case reported in this State which has been brought to my attention, or which I have been able to find, is Hay v. Star Fire Ins. Co. (77 N. Y. 235). That action was brought to reform a renewal policy to conform with the original policy, it being found that, without notice to or consent by the policyholder, the renewal policy differed substantially from the original. The policy sought to be reformed contained the following provision (p. 241): “It is furthermore hereby expressly provided and mutually agreed, that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery * * * unless such suit or action shall be commenced within twelve months next after the loss shall occur ”. With the exception of substituting “ after inception of the loss ’ ’ for ‘ ‘ after the loss ¡shall occur ’ ’, which had the effect of changing the date upon which the period of limitation would commence (Margulies v. Quaker City Fire & Marine Ins. Co., 276 App. Div. 695), I am unable to distinguish the present statutory limitation clause from that contained in the policy in the Hay case. In Hay it was claimed by defendant that the action was barred by failure to commence the action within the time limited by the policy provision. While other reasons for granting the plaintiff the relief sought were also stated by the court, it said with respect to the limitation (p. 242): “ The action is not for a 1 claim by virtue of this policy,’ but to compel the defendant to give a policy according to the agreement of the parties. This point is the same as though no policy had been given, and the action was for a specific performance of the agreement to insure. The limitation does not apply. The defendant cannot take advantage of a condition, the performance of which, it has prevented. (Ames v. N. Y. Union Ins. Co., 14 N. Y. 253-264.) The limitation clause was not contained in the first policy.”
The defendant has cited Steel v. Phenix Ins. Co. (47 F. 863, revd. on other grounds 51 F. 715) in which, in reaching a contrary conclusion, the court distinguished the Hay case in that the contractual limitation contained in that policy was not contained in the original policy. In Hay, however, the court did not appear to base its decision on that fact, and in Arthur v. Homestead Fire Ins. Co. (78 N. Y. 462, 470) decided six *731 months after its decision of Hay, the court, comprised of substantially the same Judges, distinguished Hay in the following language: “ In Hay v. Star Ins. Co. (13 Hun, 496), affirmed in this court [77 N. Y. 235], the policy contained a contract different from the one bargained for, and had been fraudulently issued in its place. The plaintiff held nothing upon which he could maintain an action, and the object was to compel the defendant to give a policy according to its agreement, or in the language of the opinion in that case, it ‘ was as though no policy had been issued, and the action was for the specific performance of the agreement to insure. ’ In the case before us the plaintiff holds a policy perfect in all its stipulations, and according with the agreement of the parties.”
In Cooley’s Briefs on Insurance (vol. 2 [2d ed.], p. 1472 [1927]) appears the following: “ The leading case of Hay v. Star Fire Ins. Co., 77 N. Y. 235, seems authority for the proposition that such a clause [limitation], though valid in general, will not apply to a suit asking for a reformation of an essential part of the contract and for recovery on the policy as reformed.
“In Arthur v. Homestead Fire Ins. Co., 78 N. Y. 462, an essentially similar clause was, however, given full effect in a similar action; the distinction, as drawn by the court, being that in the Hay Case the variant clause * * * left him with an entirely different contract from the one agreed upon, while in the Arthur Case the reformation sought was one merely of a phrase in relation to incumbrances. An attempt to distinguish the Hay Case was also made in Steel v. Phoenix Ins. Co. (C. C.) 47 Fed. 863, on the ground that the reformation sought in the Hay Case was an elimination of the limitations clause. It is true that it appears in the Hay Case that the original contract, in accordance with which reformation was sought, did not contain the limitations clause. But it does not appear that any reformation was sought in regard to such clause, nor does the court appear to base any argument upon it, merely mentioning the fact. The Steel Case * * * must be considered as asserting a doctrine contrary to the Hay Case; for the clause in each case was practically identical, and the variance in the Steel Case was as to so essential a matter as the person insured.”
New York Jurisprudence (vol. 31, Insurance, p. 448 [1963]) cites Hay as authority for the unequivocal textual statement: 1 ‘ A contractual limitation of time within which to bring suit applies only to actions upon the policy and does not apply to a suit to reform a policy.”
On the basis of the foregoing authorities I conclude that this action is not barred by the one-year limitation. No violence will *732 be done to whatever salutary purposes are thought to be served by the limitation by exempting from its application an action made necessary solely by the negligence or mistake of the defendant in issuing the policy.
The plaintiff is entitled to judgment reforming the policy to provide coverage for the machinery, equipment and corn contained in the insured building and to judgment on the policy as reformed, in the sum of $4,067.71, with costs.